UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

DAVID M. HOPPER, Special Administrator
of the Estate of Robert Andrew
Richardson, Sr., Deceased,

        Plaintiff,

vs.

MONTGOMERY COUNTY SHERIFF, *et al*.,

        Defendants.

Case No. 3:14-cv-158

Magistrate Judge Michael J. Newman
(Consent Case)

_____

**DECISION AND ENTRY: (1) GRANTING PLAINTIFF'S MOTION TO
VOLUNTARILY DISMISS ALL CLAIMS AGAINST DEFENDANT KRUSE; (2)
GRANTING SHERIFF PLUMMER'S MOTION FOR SUMMARY JUDGMENT (DOC.
114) WITH REGARD TO STATE LAW CLAIMS ASSERTED AGAINST HIM IN HIS
OFFICIAL CAPACITY, BUT OTHERWISE DENYING THE COUNTY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT (DOC. 114); (3) DENYING THE NAPHCARE
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. 112) AS MOOT; AND
(4) DENYING THE COUNTY DEFENDANTS' MOTION TO STRIKE (DOC. 150) ON
THE MERITS IN PART AND OTHERWISE DENYING SUCH MOTION AS MOOT[1]**

_____

This 42 U.S.C. § 1983 case, for which the parties have consented, is before the Court on

the motions for summary judgment filed by: (1) Defendants Sheriff Phil Plummer, Sergeants Ted

Jackson and Brian Lewis, Corrections Officers Dustin Johnson, Mathew Henning, Michael

Beach, Keith Mayes, Bradley Marshall, Michael Stumpff, and Sheriff Deputy Andrew Wittman

(collectively referred to as the "County Defendants"); and (2) Defendants NaphCare, Inc.,

Nurses Kristy Kruse,[2] Krisandra Miles, Medic Steven Stockhauser, and Brenda Garrett Ellis,

M.D.  Docs. 112, 114.  Plaintiff filed memoranda opposing these motions.  Docs. 123, 124.

---

[1] Insofar as Defendants seek to strike witness statements from certain Montgomery County Jail inmates, the Court **DENIES** such motion (doc. 150) as moot because the Court did not rely on any of these statements in issuing this Decision and Entry.

[2] Plaintiff seeks to voluntarily dismiss all claims against Defendant Kruse.  *See* doc. 124 at PageID 3696.  The Court hereby **GRANTS** Plaintiff's request to voluntarily dismiss claims against Defendant Kruse and hereby **DISMISSES** Kruse as a party to this suit pursuant to Fed. R. Civ. P. 21.

Thereafter, Defendants filed reply memoranda. Docs. 148, 149. Following the briefing of these motions, Plaintiff and the Naphcare Defendants settled their dispute, leaving only the County Defendants before the Court.

The County Defendants also filed a motion to strike certain evidence relied upon by Plaintiff to oppose summary judgment. Doc. 150. Plaintiff filed a memorandum in opposition to the motion to strike. Doc. 154. Thereafter, the County Defendants filed a reply memorandum. Doc. 155.

The Court has carefully considered all of the foregoing, including the evidence cited in support thereof. Accordingly, the County Defendants' motions are ripe for review and decision.

## I.

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Keweenaw Bay Indian Comm. v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007) (quoting Fed. R. Civ. P. 56(c)). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment -- rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.*

Once "a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading[.]" *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010) (citation omitted). Instead, the party

opposing summary judgment has a shifting burden and "must -- by affidavits or as otherwise provided in this rule -- set out specific facts showing a genuine issue for trial." *Id.* (citation omitted). Failure "to properly address another party's assertion of fact as required by Rule 56(c)" could result in the Court "consider[ing] the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).

Finally, "there is no duty imposed upon the trial court to 'search the entire record to establish that it is bereft of a genuine issue of material fact.'" *Buarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992) (citations omitted). Instead, "[i]t is the attorneys, not the judges, who have interviewed the witnesses and handled the physical exhibits; it is the attorneys, not the judges, who have been present at the depositions; and it is the attorneys, not the judges, who have a professional and financial stake in case outcome." *Id.* at 406. In other words, "the free-ranging search for supporting facts is a task for which attorneys in the case are equipped and for which courts generally are not." *Id.*

## II.

As ordered by the undersigned, Defendants filed a statement of proposed undisputed facts (docs. 112-1, 114-1), to which Plaintiff responded -- by admitting certain facts are undisputed or otherwise citing portions of the record demonstrating the existence of a material dispute of facts (docs. 123-9, 124-5). The parties support these statements by citing to evidence filed with the Court -- including approximately thirty depositions of the individual Defendants and other witnesses. *See* docs. 77-99, 102-08, 110. The Court incorporates these statements of facts herein, including those disputed facts viewed in a light most favorable to Plaintiff. *See supra*.

This case concerns the death of Robert Richardson at the Montgomery County, Ohio Jail ("Jail") on May 19, 2012. The Montgomery County Sheriff's Office ("MCSO") is in charge of operating and managing the Jail. Doc. 124-5 at PageID 3795-96. On May 19, 2012, the MCSO

employed Defendants Jackson, Lewis, Henning, Beach, Mayes, Marshall, Stumpff, and Wittman. *Id*. Defendant NaphCare, Inc. ("NaphCare") is a correctional healthcare provider that provides medical services at the Jail pursuant to a contract with the MCSO. *Id*. at PageID 3795. Defendants Felicia Foster, R.N.; Krisandra Miles, LPN; and Steven Stockhauser, EMT were employees of NaphCare on May 19, 2012. *Id*. Brenda Garrett Ellis, M.D. was a contractor of NaphCare. *Id*.

On May 17, 2012, Richardson was arrested on a *capias* issued from the Montgomery County, Ohio Juvenile Court as a result of his failure to appear for child support enforcement proceedings. Doc. 123-4 at PageID 3638; doc. 123-9 at PageID 3671. Richardson was found and arrested, then booked into the Jail on May 17, 2012. *Id*. Later that same day, without having appeared before any court, Montgomery County Juvenile Judge Anthony Capizzi entered an order imposing upon Richardson a 30-day jail sentence, from which Richardson could be released upon the payment of $2,500.00 to Montgomery County Child Support Enforcement Agency ("SEA"). *See* doc. 123-6 at PageID 3630. Although no other Juvenile Court records or transcripts are before the Court on summary judgment, the undersigned presumes -- construing all reasonable inferences in Plaintiff's favor -- that Judge Capizzi issued this sanction upon finding Richardson in contempt for failing to appear and/or for failing to pay child support obligations. *See* docs. 123-4, 123-6.

Upon arriving at the Jail, Richardson underwent a medical screening. Doc. 124-5 at PageID 3796. Records from such screening show that Richardson was six feet tall, weighed 280 pounds, had high blood pressure, and was not taking any medications. *Id*. At the Jail, Richardson shared a cell with Marcus Maxwell. *See* doc. 123-9 at PageID 3671. On May 19, 2012, upon returning to his cell after visiting with his fiancé, Richardson began suffering from an apparent medical issue. *Id*.; *see also* doc. 78 at PageID 843-44. According to responding

4

corrections officers, Richardson appeared to be having a seizure and was making seizure type movements, such as thrashing his body around. *See* doc. 78 at PageID 845.[3]

Defendant Ted Jackson, a Sergeant with the MCSO, was the first to arrive at Richardson's cell, along with Defendant Justin Johnson, a MCSO corrections officer. Doc. 83 at PageID 1109. When Jackson and Johnson arrived, Richardson was sitting on the floor, attempting to stand. *Id*. at PageID 1109. Richardson had blood and saliva coming from his mouth. *Id*. at PageID 1111. He was disoriented ("he's looking at you, but he isn't"), had accelerated breathing, was lethargic, and was unable to comprehend officers' verbal commands. *Id*. at PageID 1109-11. Throughout the entire incident, MCSO corrections officers consistently testified that Richardson neither hurt anyone nor attempted to hurt anyone in his disoriented state. Doc. 83 at PageID 1118. Because Richardson appeared unbalanced and uncoordinated, MCSO officers did not want him standing and decided to remove him from the cell where there were sharp metal objects -- such as the bed, toilet, and a bench -- in a very confined space. *Id*.

### Initial Response and Handcuffing of Richardson

MCSO officers successfully removed Richardson from his cell without issue. *Id*. at PageID 1113. Once removed, Richardson was in a face down position on the concrete floor outside the cell on the second floor walkway. *Id*. Once removed from the cell and lying face down on the ground on the upper level walkway of the cell block, Richardson kept "drawing his arms into -- under his body . . . in a natural position to lift himself up, because he's still trying to stand up at this point." *Id*. at 1114. Because a disoriented Richardson was attempting to stand up and posed a risk to his own safety -- as well as the safety of others on the second floor walkway -- Jackson made the decision to handcuff Richardson in an effort "[t]o gain more control over him[.]" *Id*.

---

[3] Richardson's autopsy revealed cannabis in his system as a result of his apparent use of marijuana within hours of his death. Doc. 99 at PageID 2408-09; doc. 102 at PageID 2527-32.

Officer Michael Stumpff, Sergeant Brian Lewis, and Officer Matthew Henning all arrived on the scene after Jackson and Johnson, and assisted in cuffing Richardson by holding his arms. Doc. 85 at PageID 1230-31; doc. 89 at PageID 1381. Officer Marshall and Defendant Stockhauser -- a NaphCare medic -- were also on the scene while officers were handcuffing Richardson. Doc. 87 at PageID 1309; doc. 108 at PageID 3266, 3274-76. Although all County Defendants state otherwise, Medic Stockhauser testified that, as MCSO Defendants were handcuffing Richardson, he and one of the NaphCare nurses "told corrections [officers]," namely Lewis, "to cuff [Richardson] in the front so [medical staff] could better assess [him]." Doc. 108 at PageID 3266, 3274-76. Medic Stockhauser's medical recommendation was not followed by corrections officers.[4] *Id.*

### Restraint of Richardson Following Handcuffing

Richardson was cuffed in under one minute and, thereafter, officers remained on the scene to restrain Richardson to the floor. Doc. 83 at PageID 1117. Marshall restrained Richardson's right shoulder, applying pressure when needed to control Richardson from moving. *Id.* at PageID 1309-10. Marshall admitted that, at times, he placed one to two hands on Richardson's back to control his movements. *Id.* Stumpff was positioned at Richardson's left shoulder near his head -- where he saw blood and mucus coming from Richardson's mouth and nose -- and restrained Richardson from lifting his shoulder. Doc. 89 at PageID 1385. Johnson assisted by straddling Richardson's lower body at his thigh/hip area. Doc. 84 at PageID 1163-64. Officer Henning assisted in kneeling over Richardson's legs. Doc. 82 at PageID 1085.

---

[4] The County Defendants argue that "it is undisputed that none of the [County Defendants] heard any medical personnel give instructions on how Mr. Richardson should be positioned during the course of the incident." Doc. 148 at PageID 3957. The Court disagrees that such fact is undisputed. *See* doc. 123-9 at PageID 3680. Plaintiff admits only that the County Defendants *testified* that they did not hear any instructions from medical personnel, but Stockhauser's testimony -- that Lewis specifically overrode his medical instruction -- creates an issue of fact in this regard. Doc. 108 at PageID 3266, 3274-76.

After about seven minutes on the scene, Johnson's shift ended and he was relieved of duty by Officer Beach, who took over straddling Richardson legs. Doc. 84 at PageID 1169; doc. 77 at PageID 816-17. Officer Henning was relieved of duty and left the scene after nine minutes and the record is unclear as to whether Henning -- a trainee who was completing his first day on the job -- was specifically replaced on the scene. Doc. 82 at PageID 1087. Fifteen minutes into the incident, Officer Mayes entered the scene for Medic Stockhauser and took over restraining Richardson's head -- he placed one hand under Richardson's head and his other hand on top of Richardson's head to prevent him from putting his head up. Doc. 88 at PageID 1351. Officer Wittman came onto the scene approximately sixteen minutes into the incident and relieved an officer near Richardson's left arm -- presumably Stumpff. Doc. 90 at PageID 1426.

### Medical Response

With regard to medical care, once Richardson was handcuffed and the scene was safe, Medic Stockhauser -- noting at that time Richardson's disorientation and that he was suffering a likely seizure -- began wiping bloody sputum from Richardson's face and trying give him oxygen. *See* doc. 108 at PageID 3281-82 (stating that "oxygen is the first . . . thing to use on somebody that just had a seizure"). Medic Stockhauser also placed a towel under Richardson's head to prevent it from striking the concrete. Doc. 105 at PageID 2938. Nurse Miles, who arrived on the scene around the same time as Medic Stockhauser, was trying to talk to Richardson and assess him. Doc. 105 at PageID 2930-32. Otherwise, Nurse Miles stood and watched Medic Stockhauser. *Id.* at PageID 2934.

Nurse Foster arrived on the scene after Richardson had been handcuffed and left after a couple of minutes to speak with Dr. Ellis. Doc. 107 at PageID 3162-63. Dr. Ellis, after being advised by Nurse Foster, ordered that Richardson be given Ativan. Doc. 105 at PageID 2875, 2959; doc. 107 at PageID 3165. Nurse Miles delivered the Ativan syringe to Nurse Kruse, which

was not successfully injected and, instead, spilled onto the floor.  *Id*.  A second dose of Ativan was then ordered, which Nurse Foster delivered to the scene and administered herself in Richardson's gluteal muscle.  Doc. 107 at PageID 3165-66.  Notably, no Ativan was detected in Richardson's blood on autopsy, however.  *See* doc. 94 at PageID 172.  Nurse Foster then left the scene shortly after administering the second Ativan shot.  *Id*. at PageID 3175.

Soon thereafter, all medical staff backed away from the scene so that Richardson could presumably be placed into a restraint chair.  Doc. 105 at PageID 2886.  During Richardson's restraint, inmates at the jail state they heard him tell those on the scene that he could not breathe.  Doc. 92 at PageID 1587.  Officer Stumpff himself testified that Richardson may have indicated he could not breathe while being restrained.  *See* doc. 89 at PageID 1375.

### Richardson's Death

After approximately twenty-two minutes of being restrained on the floor, MCSO officers realized that Richardson had stopped breathing.  *Id*. at PageID 1387-88.  Richardson subsequently died.  *Id*. at PageID 1389.  While the parties dispute the ultimate cause of Richardson's death, Plaintiff presents evidence that, when construed in his favor, shows that Richardson died as a result of positional or restraint asphyxia while being restrained in a prone position by multiple corrections officers at the Jail on May 19, 2012.  Doc. 123-1 at PageID 3582; doc. 124-2 at PageID 3758-59.

### Policies Regarding Prone Restraint

Plaintiff presents expert evidence from Michael Berg, a corrections expert, who states that, within the field of corrections, it has long been understood that pinning individuals to the ground in prone restraint for unreasonably long periods of time is dangerous and likely to cause death.  Doc. 123-8 at PageID 3636.  Berg further testifies that corrections facilities must develop

clear policies governing the restraint of individuals in prone position and that it is necessary to adequately train officers on such policies. *Id.*

On August 3, 2009, prior to Richardson's death, then-Ohio Governor Ted Strickland issued Executive Order 2009-13S, titled "*Establishing Restraint Policies Including a Ban on Prone Restraints*," wherein he ordered a number of state agencies, including the Ohio Department of Rehabilitation and Corrections,[5] to immediately adopt a policy on the use of, among other uses of force, prone restraint. Doc. 96-2 at PageID 2109. Specifically, the Executive Order -- consistent with the opinion of Berg -- states that "[a]ccepted research has shown that there is a risk of sudden death when restraining an individual in a prone position," and further ordered implementation of the following policy:

> PRONE RESTRAINT: The use of the prone restraint is prohibited across all state systems. Prone restraint is defined as all items or measures used to limit or control the movement or normal functioning of any portion, or all, of an individual's body while the individual is in a face-down position for an extended period of time. Prone restraint includes physical or mechanical restraints.

*Id.* at PageID 2110. The policy advanced in the Executive Order permitted, under certain conditions, a "*brief* physical positioning of an individual face down for the purpose of quickly and effectively gaining physical control of that individual in order to prevent harm to self and others, or prior to transport to enable the individual to be transported safely." *Id.* at 2110-11 (emphasis added).

Similar to the prohibition advanced by former Governor Strickland in Executive Order 2009-13S, the Montgomery County Jail's official policies prohibit "placing prisoners who are in restraints in prone . . . position[][.]" Doc. 96-4 at PageID 2131. Despite existence of this policy,

---

[5] Under Ohio law, "[t]he sheriff shall have charge of the county jail and all persons confined therein" and "shall keep such persons safely, attend to the jail, and govern and regulate the jail according to the minimum standards for jails in Ohio promulgated by the department of rehabilitation and correction." Ohio Rev. Code § 341.01.

however, County Defendants testified that there was "nothing in our training that says we cannot have somebody in a prone position and handcuffed." Doc. 85 at PageID 1238; doc. 90 at PageID 1420 (wherein Defendant Stumpff testified that "I've been through many trainings, and I've never been told not to do that"). In fact, some County Defendants testified that they are trained to do the opposite, *i.e.*, place people in a prone position with hands cuffed behind their back. Doc. 88 at PageID 1339.

### III.

The County Defendants move for summary judgment on all of Plaintiff's claims. Doc. 114. Specifically, Plaintiff has asserted the following constitutional claims under 42 U.S.C. § 1983: (A) an excessive use of force claim against the individual County Defendants; (B) a deliberate indifference to medical needs claim against all of the individual Defendants; and (C) a claim for municipal liability under *Monell* for failure to supervise, train, discipline, or conduct an adequate investigation. Doc. 73. Plaintiff also asserts a state law wrongful death claim against the County Defendants premised on an alleged claim of assault and battery. *Id.* The Court will address the arguments on each of these claims in turn.

### A. Excessive Force

The Court first addresses Plaintiff's § 1983 claim asserting excessive force, which Plaintiff alleges arises from the forcible restraint of Richardson in a prone position for a prolonged period of time while he was suffering from a medical episode, ultimately leading to his death by restraint asphyxia. Doc. 123 at PageID 354. The County Defendants argue that they are entitled to qualified immunity on this claim. Doc. 114 at PageID 3437-43.

"Government officials, including police officers, are immune from civil liability unless, in the course of performing their discretionary functions, they violate the plaintiff's clearly established constitutional rights." *Aldini v. Johnson*, 609 F.3d 858, 863 (6th Cir. 2010). Simply

put, qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  With regard to the individual County Defendants, they are entitled to qualified immunity unless "the evidence produced, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that (1) the defendant violated a constitutional right; and (2) the right was clearly established." *Aldini*, 609 F.3d at 863; *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

### 1.    Applicable Constitutional Amendment

"In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386, 394 (1989).  "In most instances, that will be either the Fourth Amendment's prohibition against unreasonable seizures of the person, or the Eighth Amendment's ban on cruel and unusual punishments, which are the two primary sources of constitutional protection against physically abusive governmental conduct." *Id*.

"The Fourth Amendment's prohibition against unreasonable seizures of the person applies to excessive-force claims that 'arise[ ] in the context of an arrest or investigatory stop of a free citizen,' while the Eighth Amendment's ban on cruel and unusual punishment applies to excessive-force claims brought by convicted criminals serving their sentences." *Aldini*, 609 F.3d at 864 (citations omitted). "When neither the Fourth nor the Eighth Amendment serves to protect citizens, courts have applied the Fourteenth Amendment." *Id*. (citing *Lanman v. Hinson*, 529 F.3d 673, 680-81 (6th Cir. 2008)).  "[W]hich amendment applies depends on the status of the plaintiff at the time of the incident, whether free citizen, convicted prisoner, or something in between." *Id*. at 865 (citing *Gravely v. Madden*, 142 F.3d 345, 348-49 (6th Cir. 1998)).

Here, Richardson was arrested on a *capias* issued by the Montgomery County Juvenile Court because of his failure to appear at child-support related hearings.  *See* doc. 123-4 at PageID 3627-28.  As noted, later on the same day of his arrest -- without having ever appeared before a judge following his arrest, the Juvenile Court -- presumably having found Richardson in contempt for his failure to appear, failure to pay child support obligations, or both -- issued an entry imposing a 30-day sentence on Richardson, but also stating that he could be released from jail upon the payment of $2,500.00 to the SEA.  Doc. 123-6 at PageID 3630.

From the Court's perspective, to identify the Amendment applicable to Plaintiff's excessive force claim, the critical determination is whether the sentence or sanction imposed upon Richardson by the Juvenile Court was criminal or civil.  If the contempt sanction is civil, "the Eighth Amendment is inapplicable to such a sentence[.]"  *United States v. Dien*, 598 F.2d 743, 745 (2d Cir. 1979) (citing *Uphaus v. Wyman*, 360 U.S. 72, 81 (1959); *Ingraham v. Wright*, 430 U.S. 651, 667-68 (1977)); *see also Spallone v. United States*, 487 U.S. 1251, 1257 (1988) (stating that "it appears settled that the Cruel and Unusual Punishments Clause does not apply to civil contempt sanctions"); *Wronke v. Champaign Cty. Sheriff's Office*, 132 F. App'x 58, 61 (7th Cir. 2005) (noting that "Eighth Amendment does not apply to a civil contempt sentence").[6]  On the other hand, if the sanction imposed was for criminal contempt, the Eighth Amendment applies to Plaintiff's excessive force claim.  *See United States v. United Mine Workers of Am.*, 330 U.S. 258, 365 n.30 (1947) (noting that "the protection against cruel and unusual punishments in the Eighth Amendment applies to criminal contempt").

---

[6] Based upon this Supreme Court authority, the Court finds unpersuasive the reasoning in *Lewis v. Stellingworth*, No. 07-CV-13825, 2009 WL 1384149, at *6 (E.D. Mich. May 14, 2009), in which that court -- citing Michigan *state* law -- concluded "[t]he distinction between civil contempt and criminal contempt in the context of deciding the appropriate constitutional standard to be applied to Lewis' excessive force claim is inconsequential."

12

"[T]he characterization of [a] proceeding and the relief given as civil or criminal in nature, for purposes of determining the proper applicability of federal constitutional protections, raises a question of federal law rather than state law." *Hicks on Behalf of Feiock v. Feiock*, 485 U.S. 624, 630 (1988).  Under federal law,[7] if the sanction or relief imposed "is for civil contempt the punishment is remedial, and for the benefit of the complainant." *Id*. at 631.  If, however, the sanction or relief imposed "is for criminal contempt the sentence is punitive, to vindicate the authority of the court." *Id*. at 630-31 (citation omitted).  Courts can ascertain "[t]he character of the relief imposed . . . by applying a few straightforward rules." *Id*. at 631.  Namely, "the relief provided is a sentence of imprisonment, it is remedial if 'the defendant stands committed unless and until he performs the affirmative act required by the court's order[.]" *Id*.  However, the sanction "is punitive if 'the sentence is limited to imprisonment for a definite period.'" *Id*.

Here, the sanction imposed by the Juvenile Court was a 30-day sentence in jail unless and until Richardson paid $2,500 to SEA.  *See* doc. 123-6 at PageID 3630.  Accordingly, under the circumstances, the Court concludes that Richardson was being held for civil contempt and, as a result, the Eighth Amendment Cruel and Unusual Clause cannot and does not apply.  *See Spallone*, 487 U.S. at 1257.  Instead, because Richardson was neither a convicted prisoner nor a free citizen, the undersigned concludes that he falls within the "gray area" where "the Fourteenth Amendment's more generally applicable Due Process Clause governs to bar a governmental official's excessive use of force." *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013); *see*

---

[7] Similarly, under Ohio law, "it is usually said that offenses against the dignity or process of the court are criminal contempts, whereas violations which are on their surface offenses against the party for whose benefit the order was made are civil contempts." *State v. Kilbane*, 400 N.E.2d 386, 390 (Ohio 1980).  Further, as a general principle, "civil contempt is characterized by conditional sanctions, *i.e.*, the contemnor is imprisoned until he obeys the court order[,]" whereas "[c]riminal contempt . . . is usually characterized by an unconditional prison sentence or fine." *Denovchek v. Bd. of Trumbull Cty. Comm'rs*, 520 N.E.2d 1362, 1364 (Ohio 1988).

*also Walters v. Cty. of Charleston*, No. CA 2:01-0059-18, 2002 WL 34703346, at *3 (D.S.C. Feb. 7, 2002).[8]

### 2.     Fourteenth Amendment Excessive Force Violation

Under the Fourteenth Amendment, Plaintiff's burden is to "show . . . that the force purposely or knowingly used against him was objectively unreasonable." *Morabito*, 628 F. App'x at 357 (citing *Kingsley,* 135 S.Ct. at 2473). In *Kingsley*, the Supreme Court held that an excessive force analysis under the Fourteenth Amendment -- as opposed to under the Eighth Amendment -- contains no subjective reasonableness inquiry. *See Kingsley*, 135 S. Ct. at 2472-73. Thus, the Court's only inquiry under a Fourteenth Amendment excessive force analysis is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Clay*, 797 F.3d at 370.

In determining objective reasonableness, courts consider a number of factors, such as "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Kingsley*, 135 S. Ct. at 2466. Under this objective inquiry, "[a]n officer's evil intentions will not make a Fourth Amendment violation" just as

_____

[8] Because the Court finds that the Eighth Amendment does not apply to this case in the absence of a criminal punishment, what the Court is left with is a claim arising either under the Fourth or Fourteenth Amendment, and the analysis under both is the same. *See Clay v. Emmi*, 797 F.3d 364, 369 (6th Cir. 2015) (stating that, following the Supreme Court's decision in *Kingsley v. Hendrickson*, 135 S.Ct 2466, 2473 (2015), an "excessive force claim brought under the Fourteenth Amendment's Due Process Clause is subject to the same objective standard as an excessive force claim brought under the Fourth Amendment"); *see also Morabito v. Holmes*, 628 F. App'x 353, 357 (6th Cir. 2015). Thus, the same outcome would result regardless of whether the Court applies the Fourth Amendment or the Fourteenth Amendment.

"officer's good intentions [will not] make an objectively unreasonable use of force constitutional." *Graham*, 490 U.S. at 397.

The County Defendants argue that Plaintiff cannot show a genuine issue of material fact concerning objective unreasonableness because no evidence shows that any of the County Defendants applied compressive force to Richardson's torso during the five minutes before his death. Doc. 114 at PageID 3340. The County Defendants argue that, to survive summary judgment, Plaintiff must show an issue of fact within these limited confines based upon the testimony of Plaintiff's expert Daniel Spitz, M.D., who the County Defendants contend testified that: (1) restraint asphyxia occurs only when force is applied to the torso; and (2) the relevant time period at issue is the last five minutes of the twenty-two minute event. Doc. 114 at PageID 3429, 3340.

The Court finds the County Defendants' limited focus, concerning the time frame and the type of compressive force applied, to be unfounded. First, Dr. Spitz's testimony is equivocal on whether compressive force to the torso itself is the only use of force that can lead to asphyxia of restrained individuals held in a prone position. *See* doc. 99 at PageID 2414. Further, Dr. Spitz's testimony does not support the County Defendants' contention that the five minutes before Richardson's death is the only relevant period of time in which the force applied should be assessed. *Id.* Specifically, Dr. Spitz testified:

> Q.  So really, when we're talking about positional asphyxia, restraint asphyxia, I guess the defining feature to that is going to be some sort of pressure on the subject, correct?
>
> A.  Correct. *Some type of compressional force not allowing the chest to expand fully*.
>
> Q.  And we're talking about compressional force on the torso,[9] right?

---

[9] It should be noted that Dr. Spitz defines "torso" to include the upper back and neck. *See* doc. 99 at PageID 2417; doc. 123-1 at PageID 3582, 3605.

A.     Correct.

Q.     Not the legs?

A.     Well, I would say that you're correct but many times people use their arms and their legs in order to help with respiratory movements.  In other words, if I have a compressive force on my back and I'm able to use my arms to give myself some leverage to take pressure off of my chest, that's going to allow me to breathe more effectively even with pressure on my back.  If I'm able to bend my knees so that I can take pressure off my torso, again, that's going to allow me to facilitate respiratory movements even with a compressive force on the back.

*If you completely immobilize or limit movement of the legs and arms and put pressure on the back, there's no way to alleviate any of that pressure. Over time, you're going to basically tire.  Respiratory movements will ultimately stop. And if this is prolonged like it was in this case, the outcome is going to be what we have here.*

Q.     From your review of the literature and your experience, is there a time period that you look at to define prolonged or does it depend on the situation? I guess what do you mean by prolonged?

A.     Well, many cases where somebody is put in a prone position does not result in a fatal outcome because it's brief. In other words, even if you completely limit someone's ability to breathe and you do it over a period of seconds, the outcome is not going to be bad in most situations. *You don't even need to have full compressive force to cause death if it's going to be over a prolonged period of time. Certainly, 22 minutes is a prolonged period of time.* And as I indicated, most of that, there were periods of prone restraint and then there were are periods of where the body [wasn't] entirely prone.  There may be some slight recovery during that period of time where the individual is not entirely prone.  It's the last five, six minutes that are the most detrimental.    But, obviously, *Mr. Richardson is already in a compromised state leading into those last five minutes because he's already been involved in an active restraint and struggling and having extreme energy expenditure and stress on the organs leading up to that last five minutes.*

*Id*. (emphasis added).  A reasonable juror could conclude, based upon Dr. Spitz's testimony, that compressive restraint of Richardson's entire body -- including some force applied to his back and legs -- in-and-out of a prone position over a twenty-two minute period, led to his death.  *Id*.

Further, contrary to the County Defendants' contention, evidence has been presented showing compressive restraint of Richardson (including to his torso) for much of the twenty-two

16

minute period of time, including during the five minutes before Richardson's death. Jurors viewing the jail video of the incident could reasonably conclude that officers applied compressive force upon a restrained Richardson's back, shoulder blades, shoulders, neck, hands, waist, thighs and lower legs throughout much of the twenty-two minute ordeal. *See* doc. 116 (*i.e.*, the jail video filed manually with the Court at the request of all parties); *see also Jennings v. Fuller*, No. 15-1870, 2016 WL 4727274, at *3 (6th Cir. Sept. 9, 2016) (stating "[a] jury looking at the video could readily conclude" that significant pressure was applied to an inmate's back).

In addition to the jail video, witnesses Jason Haag and Keith Wayne -- both inmates at the Jail at the time of the incident -- testified that officers applied compressive force to Richardson's neck, head, shoulders and back as he continually told officers that he could not breathe. *See* doc. 92 at PageID 1587, 1593, 1603-06; doc. 93 at PageID 1637. The County Defendants urge the Court to exclude the testimony of these two witnesses as a matter of law under *Scott v. Harris*, 550 U.S. 372 (2007), as inherently not credible based upon their limited or completely obstructed view. In *Scott*, the Supreme Court held that, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott* 550 U.S. at 380. In that case, a video of the incident at issue -- a high speed car chase -- told "quite a different story" than respondent's testimony offered in opposition to summary judgment. *Id*. at 379-80. Here, a reasonable jury could conclude that the aforementioned Jail video actually corroborates much of the testimony offered by Haag and Wayne concerning what they allegedly saw on May 19, 2012.[10] Thus, the Court

---

[10] The County Defendants provide no basis upon which the Court could exclude the testimony of Haag and Wayne concerning what they heard during the incident.

declines to exclude the testimony of Haag and Wayne under *Scott* or otherwise assess the credibility of such testimony for purposes of summary judgment.[11]

Further, the Court is cognizant that "[e]ach defendant's liability must be assessed individually based on his [or her] own actions." *Pollard v. City of Columbus, Oh.*, 780 F.3d 395, 402 (6th Cir. 2015), *cert. denied*, 136 S. Ct. 217 (2015) (citing *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010)). Specifically, with regard to excessive force claims, "a plaintiff must prove that the officer (1) actively participated in the use of excessive force, (2) supervised the officer who used excessive force, or (3) owed the victim a duty of protection against the use of excessive force." *Id.* (citation omitted).

In this instance, all of the County Defendants either actively participated in the use of allegedly excessive force or supervised the other officers. The Court, as set forth above, declines to limit its inquiry to the five minutes immediately preceding Richardson's death and, instead, considers the incident as a whole. Doc. 99 at 2414 (wherein Dr. Spitz testified "Richardson is already in a compromised state leading into those last five minutes because he's already been involved in an active restraint and struggling and having extreme energy expenditure and stress on the organs leading up to that last five minutes").

As noted previously, evidence shows that Jackson, Lewis, Johnson, Stumpff and Beach all participated in cuffing Richardson while in a prone position. *See* doc. 89 at 1381. Marshall applied pressure to Richardson's right shoulder while he was restrained to control Richardson's movement, and he admitted that, at times, he placed one to two hands on Richardson's back. Doc. 87 at PageID 1309-10. Stumpff restrained Richardson near his head at the left shoulder to prevent him from lifting his shoulder. Doc. 89 at PageID 1385. Johnson straddled Richardson's

---

[11] The Court declines to find, based upon the jail video or still photos provided by Defendants, that any of the jail inmates were wholly unable to view events from their vantage points in their cells. Credibility on this basis should be determined by the fact-finder at trial based upon the evidence as a whole.

lower body at his thigh/hip area. Doc. 84 at PageID 1163-64. For up to nine minutes, Henning kneeled over Richardson's legs. Doc. 82 at PageID 1085. Beach relieved Johnson after about seven minutes and continued straddling Richardson legs. Doc. 84 at PageID 1169; doc. 77 at PageID 816-17. Fifteen minutes into the incident, Mayes restrained Richardson's head, doc. 88 at PageID 1351, and video evidence can reasonably be construed to show he placed significant pressure on the back of Richardson's head and neck. *See* doc. 116. Finally, Wittman came onto the scene approximately sixteen minutes into the incident and restrained Richardson's left arm. Doc. 90 at PageID 1426.

In addition to the foregoing, both Jackson and Lewis were supervisors on the scene. A supervising official can be individually liable under § 1983 where "the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016). Thus, "'at a minimum,' the plaintiff must show that the defendant 'at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.'" *Id.* (citing *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)).

Here, issues of fact remain concerning the individual supervisor liability of Jackson and Lewis based upon -- at a minimum -- the fact that Jackson and Lewis participated in cuffing Richardson; were on the scene while Richardson pleaded to officers that he could not breathe; and were on the scene while subordinate officers restrained Richardson to the floor for what a jury could conclude was an extended and unreasonable period of time. Doc. 83 at PageID 1112-17; doc. 83 at PageID 1231. In addition, a disputed issue of fact remains as to whether Lewis (and potentially Jackson) refused Medic Stockhauser's medical advice to cuff Richardson's hands in the front and to place him on his back so that he could be properly assessed. Doc. 108 at PageID 3266, 3274-76.

Based upon all of the foregoing, the undersigned finds no merit to Defendants' arguments in this regard and finds that genuine issues of material fact remain concerning the reasonableness of the force used in this case.[12]

### 3. Clearly Established Right

The next step in the qualified immunity analysis concerns whether the right allegedly violated by the individual County Defendants was "clearly established" at the time of Richardson's death. *See supra*. A right is "clearly established" when "existing precedent . . . placed the statutory or constitutional question beyond debate." *City & Cty. of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) (citing *al-Kidd*, 563 U.S. at 741). The Supreme Court has instructed courts to "not define clearly established law at a high level of generality[,]" such as "that an unreasonable search or seizure violates the Fourth Amendment[.]" *al-Kidd*, 563 U.S. at 742. Instead, "[t]he dispositive question is 'whether the violative nature of particular conduct is clearly established'"; an inquiry that "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (citations and internal quotations omitted).

In finding a right "clearly established," the Court need not rely upon "a case on point," *id.*, or even "a prior case [that is] 'fundamentally' or 'materially' similar to the present case[.]" *Baynes v. Cleland*, 799 F.3d 600, 613 (6th Cir. 2015), *cert. denied*, 136 S. Ct. 1381 (2016). Instead, such a right need only be defined "in a particularized context," such as finding a Fourth Amendment violation when state actors use "excessively forceful or unduly tight handcuffing."

---

[12] The undersigned would reach the same conclusion if utilizing a heightened standard for analyzing the reasonableness of the force used under the Eighth Amendment. *See McKinney v. Lexington-Fayette Urban Cty. Gov't*, No. 5:12-CV-360-KKC, 2015 WL 4042157, at *8 (E.D. Ky. July 1, 2015), *aff'd in part, rev'd in part sub nom. McKinney v. Lexington–Fayette Urban Cty. Gov't*, 651 F. App'x 449 (6th Cir. 2016).

*Baynes*, 799 F.3d at 614. Such a "level of particularity in defining the constitutional right easily meets the standards set out by the Supreme Court[.]" *Id*.

With regard to the constitutional violations alleged here, the Sixth Circuit, in 2004, held that "[c]reating asphyxiating conditions by putting substantial or significant pressure, such as body weight, on the back of an incapacitated and bound suspect constitutes objectively unreasonable excessive force." *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 903 (6th Cir. 2004). Further, it is "clearly established that putting substantial or significant pressure on a suspect's back while that suspect is in a face-down prone position after being subdued and/or incapacitated constitutes excessive force." *Id*. at 903. In fact, "[t]he prohibition against placing weight on [a person's] body *after* [that person is] handcuffed[,]" even if not in a prone position, is "clearly established[.]" *Martin v. City of Broadview Heights*, 712 F.3d 951, 961 (6th Cir. 2013) (emphasis in original) (finding that such prohibition was clearly established at the time of the August 2007 incident in that case).

Based upon the foregoing, the undersigned concludes that, at the time of the May 19, 2012 incident in this case, it was "clearly established" that forcibly restraining an individual in a prone position for a prolonged period of time is unconstitutional.[13] As a result, the undersigned finds the County Defendants' request for qualified immunity without merit.

---

[13] The parties suggest that the Supreme Court in *Kinsgley* announced a new standard for determining excessive force claims under the Fourteenth Amendment. *See* doc. 114 at PageID 3428; doc. 123 at PageID 3559. Some courts, however, find that "the central holding of *Kingsley* . . . had been the law since *Bell v. Wolfish*, 441 U.S. 520 (1979)." *Shuford v. Conway*, No. 16-12128, 2016 WL 6820764, at *4 (11th Cir. Nov. 18, 2016) (citing *Kingsley*, 135 S.Ct. at 2473-74) (noting that the objective standard applicable to excessive force claims asserted by pretrial detainees under the Fourteenth Amendment "is consistent with our precedent"). The Sixth Circuit notes that the standard applicable to excessive force claims under the Fourteenth Amendment "was unclear" "[u]ntil very recently" when the Supreme Court issued its decision in *Kingsley*. *See Coley v. Lucas Cty., Oh.*, 799 F.3d 530, 538 (6th Cir. 2015) Regardless of whether *Kingsley* affirmed previously existing Supreme Court precedent or clarified unsettled law, the undersigned concludes that it does not impact the qualified immunity analysis set forth herein. *See Morabito*, 628 F. App'x at 357-58 (finding a clearly established constitutional right despite the intervening holding of *Kingsley*).

21

### B. Deliberate Indifference

"The Eighth Amendment's prohibition on cruel and unusual punishment generally provides the basis to assert a § 1983 claim of deliberate indifference to serious medical needs, but where that claim is asserted on behalf of a pre-trial detainee, the Due Process Clause of the Fourteenth Amendment is the proper starting point." *Phillips v. Roane Cnty., Tenn.*, 534 F.3d 531, 539 (6th Cir. 2008) (citing *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)). As noted above, Richardson was not a convicted criminal inmate and, therefore, the Eighth Amendment cannot govern the deliberate indifference claims alleged in this case. *See supra*.

The determination as to whether a state actor acted with deliberate indifference in violation of either the Eighth or Fourteenth Amendment consists of an objective and subjective inquiry. *Smith v. Erie Cnty. Sheriff's Dep't*, 603 F. App'x 414, 419 (6th Cir. 2015) (citations omitted).[14] "The objective criterion requires a plaintiff to show a 'sufficiently serious medical need[,]'" whereas "[t]he subjective requirement demands a 'showing of more than mere negligence, but something less than specific intent to harm or knowledge that harm will result is required.'" *Smith*, 603 F. App'x at 419.

Here, because facts of record -- when viewed in a light most favorable to Plaintiff -- sufficiently create a dispute of fact as to whether Richardson laid restrained in a predominately prone position for a substantial length of time, *i.e.*, twenty-two minutes, reasonable minds could

---

[14] Following the Supreme Court's recent holding in *Kingsley*, *supra*, "it is unclear whether courts should continue to use the Eighth Amendment's deliberate-indifference standard to analyze inadequate-medical-care claims brought by pretrial detainees pursuant to the Due Process Clause." *Wilber*, 2016 WL 892800, at *6. The Sixth Circuit -- while noting *Kingsley* in the context of assessing an excessive force claim under the Fourteenth Amendment -- has continued to "require[ ] plaintiff to establish a subjective component" to demonstrate a deliberate indifference claim under the Fourteenth Amendment, albeit, without specifically considering the applicability of *Kingsley* to a deliberate indifference claim. *See Morabito*, 628 F. App'x at 358. Absent argument to the contrary by Plaintiff, *see* doc. 124 at PageID 3719 (arguing applicability of a subjective inquiry to the deliberate indifference claim in this case), and relying on *Morabito*, *supra*, the undersigned declines to find that *Kingsley* altered the deliberate indifference test under the Fourteenth Amendment.

conclude that Richardson was suffering from an obvious serious medical need. *Cf. Jones v. City of Cincinnati*, 507 F. App'x 463, 469 (6th Cir. 2012); *May v. Twp. of Bloomfield*, No. 11-14453, 2013 WL 2319323, at *14 (E.D. Mich. May 28, 2013) (finding the existence of an obvious serious medical need where decedent, "after physically exerting himself in a struggle with . . . [o]fficers" "was face down on the ground, with his arms handcuffed behind his back, for approximately three minutes").

Further, genuine issues of material fact remain concerning the subjective component of the deliberate indifference claim. Evidence, viewed in a light most favorable to Plaintiff, demonstrates that Richardson continually told those on the scene that he could not breathe. Doc. 92 at PageID 1587. Officer Stumpff agrees that Richardson may have indicated to those on the scene his inability to breathe. Doc. 89 at PageID 1375. Officer Wittman testified that there was cause to be concerned about Richardson's ability to breathe. Doc. 90 at PageID 1424. Despite this cause for concern, the individual County Defendants each participated -- or supervised -- in Richardson's restraint for up to twenty-two minutes. *See supra*; *see also Lanman*, 529 F.3d at 685-89. These disputed facts preclude summary judgment with regard to the individual County Defendants. *Lanman*, 529 F.3d at 685-89. Further, Richardson's right to be free from such conduct was clearly established as of May 19, 2012. *See supra*; *see also Lanman*, 529 F.3d at 685-89.

### C.    *Monell* Liability; Failure to Train, Supervise and Investigate

Section 1983 imposes liability on any "person who, under color of any statute, ordinance, regulation, custom or usage, of any State" subjects another to "the deprivation of any rights, privileges, or immunities secured by the Constitution or laws." 42 U.S.C. § 1983. Local governments -- such as municipalities, counties or townships -- are considered persons under § 1983, and "may be sued for constitutional deprivations." *Monell v. Dep't of Soc. Servs.*, 436

U.S. 658, 690-91 (1978). However, such entities cannot be held liable for the acts of its officials on a *respondeat superior* theory. *Id.* at 693. Instead, an official policy or custom must be the "moving force" behind the alleged constitutional deprivation. *See City of Canton v. Harris*, 489 U.S. 378, 389 (1989). To demonstrate *Monell* liability, one must: (1) identify the policy or custom; (2) connect the policy to the governmental entity; and (3) show a particular injury of a constitutional magnitude incurred because of that policy's execution. *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (internal citations omitted).

A governmental entity's "failure to [adequately] train and supervise" employees "about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983[.]'" *Shadrick v. Hopkins Cty., Ky.*, 805 F.3d 724, 737 (6th Cir. 2015) (citations omitted); *see also Gregory v. City of Louisville*, 444 F.3d 725, 753 (6th Cir. 2006) (stating that "courts recognize a systematic failure to train police officers adequately as custom or policy which can lead to city liability" under § 1983).

To prevail on these claims against a government entity under §1983, Plaintiff must show training and supervision provided: (1) "is inadequate to the tasks that the officers must perform; (2) that the inadequacy is the result of the [County's] deliberate indifference; and (3) that the inadequacy is closely related to or actually caused the plaintiff's injury." *Brown v. Chapman*, 814 F.3d 447, 463 (6th Cir. 2016); *see also Shadrick*, 805 F.3d at 737 (stating that a plaintiff's "burden under § 1983 is to prove that [the entity's] failure to train and supervise its [employees] . . . amounted 'to deliberate indifference to the rights of persons with whom the [employees] come into contact"); *Glowka v. Bemis*, No. 3:12-CV-345, 2015 WL 8647702, at *5 (S.D. Ohio Dec. 14, 2015). "[E]vidence of a policy of deliberate indifferences" can also be found where a Sheriff's Office fails "to investigate [the] incident and punish the responsible parties." *Leach v. Shelby Cty. Sheriff*, 891 F.2d 1241, 1248 (6th Cir. 1989).

Here, with regard to training and supervision, Berg, a corrections expert, testifies that, within the field of corrections, it has long been understood that pinning individuals to the ground in prone restraint for unreasonably long periods of time is dangerous and likely to cause death. Doc. 123-8 at PageID 3636.  Berg further testifies that it is necessary to adequately train officers on such policies.  *Id*.  The 2009 Ohio Executive Order discussed above prohibited all state systems, including the ODRC  -- who is responsible for setting minimum standards for Ohio jails -- from "limit[ing] or control[ling] the movement or normal functioning of any portion, or all, of an individual's body while the individual is in a face-down position for an extended period of time."  Doc. 96-2 at PageID 2110.  Similarly, written policies of the Jail itself prohibit "placing prisoners who are in restraints in prone . . . position[][.]"  Doc. 96-4 at PageID 2131.

Despite the foregoing and the existence of an actual Jail policy, however, County Defendants -- specifically supervising officer Sergeant Lewis -- testified that there was "nothing in our training that says we cannot have somebody in a prone position and handcuffed."  Doc. 85 at PageID 1238; doc. 90 at PageID 1420 (wherein Defendant Stumpff testified that "I've been through many trainings, and I've never been told not to do that").  In fact, evidence of record suggests that officers are trained to do the opposite, *i.e.*, place people in a prone position with hands cuffed behind their back.  Doc. 88 at PageID 1339.  Such evidence creates a genuine issue of material fact precluding summary judgment on behalf of the Sheriff in his official capacity. *See Martin v. City of Broadview Heights*, No. 1:08 CV 2165, 2011 WL 3648103, at *9-10 (N.D. Ohio Aug. 18, 2011), *amended*, No. 1:08 CV 2165, 2011 WL 5361062 (N.D. Ohio Oct. 31, 2011), *and aff'd*, 712 F.3d 951 (6th Cir. 2013) (finding an issue of act concerning "deliberate indifference" in a positional asphyxia case where "the City knew, as evidenced by the promulgation of its Policies, that its police officers would use force to restrain and arrest citizens,

yet failed to follow accepted professional standards in training its officers of how to properly apply such force").[15]

Further, evidence of record -- demonstrating that subsequent investigation into the incident involved no interview of any of the officers involved (doc. 79 at PageID 887), no review of the Jail's policies (doc. 81 at PageID 1053), no use of force investigation (doc. 81 at PageID 1040), and that Sheriff Plummer approved a finding that the Defendant officers provided basic medical care to Richardson (doc. 79-1 at PageID 912) -- create an issue of material fact as to whether an adequate and meaningful investigation was conducted. *Baker v. Union Twp., Ohio*, No. 1:12-CV-112, 2013 WL 4502736, at *24 (S.D. Ohio Aug. 22, 2013), *aff'd in part, appeal dismissed in part sub nom. Baker v. Union Twp.*, 587 F. App'x 229 (6th Cir. 2014).

Based upon the foregoing, the Court finds Plaintiff has presented evidence creating a genuine issue of material fact as to the County's maintenance of a policy permitting the unconstitutional use of prone restraint and its failure to train and supervise concerning the use of such restraint and the high risk of asphyxia that may result from the use of such force. *See Martin*, 2011 WL 3648103, at *9-10 (finding an issue of act concerning "deliberate indifference" in a positional asphyxia case where "the City knew, as evidenced by the promulgation of its Policies, that its police officers would use force to restrain and arrest citizens, yet failed to follow accepted professional standards in training its officers of how to properly apply such force").

### D.    State Law Claims

Finally, the County Defendants move for summary judgment on Plaintiff's state law wrongful death claims premised on the County Defendants' alleged assault and battery of

---

[15] In their motion to strike (doc. 150), the County Defendants seek to strike the testimony of Berg concerning the adequacy of officer training. Defendants argue that such opinion should be stricken because it is improperly based solely "on the fact that the incident itself occurred." Doc. 150 at PageID 4000-01. However, Berg's opinion is based on more than just the occurrence of the incident itself, and is also based upon the testimony of the County Defendants themselves. *See* doc. 98 at PageID 2325. Accordingly, the County Defendants' motion (doc. 150) in this regard is **DENIED**.

Richardson. *See* doc. 114 at PageID 3450-52. The County Defendants argue that, insofar as Plaintiff asserts an assault and battery claim against Sheriff Plummer in his official capacity, the Sheriff is immune under Ohio Rev. Code § 2744.02. *Id*. at PageID 3451-52. Plaintiff sets forth no specific argument in opposition to the County's motion in this regard (*see* doc. 123 at PageID 3573) and, therefore, the Court finds the County Defendants' argument in this regard to be unopposed and such claim abandoned. *Brown v. VHS of Michigan, Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) (stating that "a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment").

Even assuming, *arguendo*, that such claim has not been abandoned, summary judgment on the wrongful death claim as asserted against Sheriff Plummer in his official capacity is proper. Under Ohio law, Ohio political subdivisions -- such as Montgomery County, Ohio and the MCSO -- are entitled to immunity for torts, subject to limited exceptions not applicable here. *See* Ohio Rev. Code § 2744.02(A)(1) (stating that, subject to specific exceptions not applicable here, "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental[16] or proprietary function"). Claims against Sheriff Plummer in his official capacity are, in essence, claims against the political subdivision itself. *See Petty v. Cty. of Franklin, Oh.*, 478 F.3d 341, 349 (6th Cir. 2007). In light of the foregoing, and absent specific opposition by Plaintiff, the Court finds Sheriff Plummer is entitled to immunity on Plaintiff's state law claims under Ohio Rev. Code § 2744.02.

However, the individual County Defendants -- Jackson, Lewis, Johnson, Henning, Beach, Mayes, Marshall, Stumpff, and Wittman -- are not entitled to immunity under Ohio Rev. Code

---

[16] The operation of a jail "is a governmental function." *Stefan v. Olson*, 497 F. App'x 568, 580 (6th Cir. 2012).

§ 2744.02.  Instead, under Ohio law, employees of political subdivisions are entitled to immunity under Ohio Rev. Code § 2744.03(A)(6) unless "[t]he employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner[.]"  While "the threshold for liability" under a recklessness standard "appears to be slightly higher under Ohio law" -- as opposed to a federal "deliberate indifference standard" -- the Court concludes, based upon the foregoing analysis of Plaintiff's deliberate indifference claim, that a reasonable jury could find recklessness sufficient to overcome employee immunity under Ohio Rev. Code § 2744.03(A)(6)(b).  *Stefan v. Olson*, 497 F. App'x 568, 581 (6th Cir. 2012).  Therefore, summary judgment on Plaintiff's state law wrongful death claims asserted against the individual County Defendants is not appropriate.

## IV.

Based upon the foregoing, the Court **ORDERS** as follows:

(1)    Plaintiff's motion to voluntarily dismiss all claims against Defendant Kruse (doc. 124 at PageID 3696) is **GRANTED** and such claims are hereby **DISMISSED** pursuant to Fed. R. Civ. P. 21 with prejudice;

(2)    The County Defendants' motion for summary judgment (doc. 114) is **GRANTED** with regard to state claims asserted against Sheriff Plummer in his official capacity, but otherwise **DENIED**;

(3)    The NaphCare Defendants' motion for summary judgment (doc. 112) is **DENIED AS MOOT**; and

(4)    The County Defendants' motion to strike (doc. 150) is **DENIED** on the merits as to the testimony of Michael Berg, but otherwise **DENIED AS MOOT** with regard to witness statements.

**IT IS SO ORDERED.**


Date:   February 6, 2017                          s/ Michael J. Newman
                                                   Michael J. Newman
                                                   United States Magistrate Judge